IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRCT OF VIRGINIA
RICHMOND DIVISION

JAN 1 3 2015

CLERK, U S DIS
RICHMO

| | |
|---|---|
| HEALTH DIAGNOSTIC LABORATORY, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 3:15 CV030 |
| ROBERT BRADFORD JOHNSON, | ) ) ) |
| and | ) ) |
| F. CALHOUN DENT, III | ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, Health Diagnostic Laboratory, Inc. ("HDL"), by counsel, files its Complaint seeking Preliminary and Permanent Injunctive Relief against Defendants Robert Bradford Johnson ("Johnson") and F. Calhoun Dent, III ("Dent") and alleges the following:

### INTRODUCTION

1.     By this Complaint, HDL seeks preliminary and permanent injunctive relief to enforce confidentiality, non-competition and non-solicitation covenants contained in the Shareholders Agreement of Health Diagnostic Laboratories, Inc. (the "Shareholders Agreement"). On April 2, 2010, Johnson and Dent executed the Second Amendment of the Shareholders Agreement agreeing to be bound by all provisions of the Shareholders Agreement, including the confidentiality, non-competition, and non-solicitation

provisions while they own shares in HDL and for a one year period following the relinquishment of their ownership interest in HDL.

2.     Johnson and Dent are the sole founders and owners of BlueWave Healthcare Consultants, Inc. ("BlueWave"). BlueWave is a multi-line business that sells medical devices and products as well as providing a sales force to market laboratory tests. HDL retained BlueWave pursuant to a sales agreement dated January 4, 2010 (the "Sales Agreement"), to perform certain sales functions, including marketing and sales of various laboratory tests and services HDL provides to physicians and medical groups specializing in cardiology and other disease management specialties. BlueWave controls a national network of sales representatives which BlueWave purports to have structured as dozens of independent contractors, in part, to maximize the tax advantages and income to Johnson and Dent. Johnson and Dent each also own approximately 1.5% of HDL's stock.

3.     HDL began as a start-up laboratory in Richmond, Virginia, and in the approximately five years since processing its first samples in 2009, HDL has matured into a significant participant in the diagnostic laboratory field of healthcare. Since late 2012, and before the disclosure of an industry-wide review of certain industry practices, HDL has been conducting a significant internal compliance review and analysis to ensure that it complies with various Federal and state laws regulating laboratory services. Based on its analysis and information obtained from other sources, HDL concluded that certain provisions of the Sales Agreement posed a potential risk of violating or potentially inducing the violation of Federal and state laws.

4.     Consistent with HDL's commitment to ensure compliance with the law, and to promote compliance with applicable laws by its sales force, HDL sought to

2

renegotiate the Sales Agreement's potentially non-compliant terms with BlueWave as allowed under Section 18 of that agreement. HDL provided BlueWave with written notice of HDL's need to renegotiate the terms of the Sales Agreement on December 22, 2014. Notwithstanding BlueWave's duty as part of HDL's sales force to vigilantly ensure compliance with all healthcare laws and regulations, Johnson and Dent put their economic interests ahead of compliance and refused to engage in good faith on renegotiating the potentially non-compliant provisions of the Sales Agreement. As a result, HDL was left with no other option but to terminate the Sales Agreement, which it did on January 9, 2015.

5.      Johnson and Dent threatened to compete with HDL, to direct other sales representatives not to work with HDL and to appropriate for themselves and other laboratories the physicians and medical practices that were serviced by HDL, all in violation of the Shareholders Agreement. Defendants' actions have or will cause significant irreparable harm to HDL's business by disrupting its customer relationships and good will with the healthcare providers. An injunction is necessary to enforce the terms of the Shareholders Agreement and to prevent Defendants from using HDL's confidential information and permanently damaging HDL's business, for which compensation by way of damages would be inadequate.

**PARTIES**

6.      HDL is a Virginia Corporation with its principal place of business and headquarters is located in Richmond, Virginia.

7.     Johnson is a founder and fifty percent owner of BlueWave, which is an Alabama corporation with its principal place of business located in Alabama. Johnson is a resident of Alabama.

8.     Dent is also a founder and fifty percent owner of BlueWave. He is a resident of South Carolina.

## Jurisdiction

9.     This Court has personal jurisdiction over Defendants because they entered into the Shareholders Agreement, and thus became partial owners of a Virginia corporation. As HDL shareholders, they agreed to perform certain obligations to a Virginia company, including the duty to refrain from misusing HDL's confidential information, to refrain from competing against HDL, and to refrain from soliciting HDL's customers to use another laboratory while they remained shareholders.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and there is complete diversity between the Plaintiff and the Defendants.

11.     Venue is proper in this Court under 28 U.S.C. § 1391, because the Shareholders agreement was formed in Virginia and the Shareholders Agreement forms the basis of this Complaint.

## FACTS

12.     HDL offers advanced testing for cardiovascular disease, diabetes, and other medical conditions to patients across the United States. HDL's tests allow physicians to diagnose their patient's medical conditions during the earliest stages of the disease, rather than after serious health issues arise.

4

13.     HDL relies on its sales representatives, such as Defendants, to educate and inform healthcare providers about HDL's advanced testing.  Healthcare providers, in turn, can refer patient samples to HDL for testing, as opposed to sending those samples to competing laboratories.  HDL relies upon its sales representatives to regularly and personally interact with HDL's healthcare provider clients and their staffs to educate them on the efficacy of HDL's tests, answer questions, and resolve issues, among other things.  In short, HDL's sales representatives play a critical role developing and maintaining HDL's client relations with the healthcare providers and serve as the "face" of HDL to its client healthcare providers.

14.     Before terminating the Sales Agreement, HDL directly employed a relatively small sales force that serviced primarily Virginia physicians and medical groups.  HDL is in the process of expanding its directly employed sales force and will be training and supervising that new sales force, including exerting more significant controls over and monitoring that sales force.

15.     Before termination of the Sales Agreement, BlueWave supplied the vast majority of HDL's sales force, including sales and marketing services for HDL in forty-seven states and the District of Columbia.

16.     Johnson and Dent, as employees and owners of BlueWave, directly provided sales and marketing services for HDL in Georgia, South Carolina, North Carolina, Alabama, Louisiana and Mississippi.

17.     During the existence of the Sales Agreement, BlueWave expanded the reach of its sales force not by hiring additional sales representatives as employees, but rather by entering into purported independent contractor agreements with companies

formed by the salespersons. Johnson and Dent required these arrangements so as to maximize their earnings, because BlueWave could avoid paying state taxes, social security tax and benefits for the vast majority of its workforce, among other things. BlueWave's purported sub-contractors hired so-called "helpers" to assist the salespersons in their marketing and sales efforts. BlueWave employed a sales force of over 60 salespersons and helpers through its sub-contractor arrangement. The salespersons under contract with BlueWave operated under the name "BlueWave Healthcare Consultants" and had an email address associated with BlueWave: "@bluewavehealth.com."

18.     Johnson and Dent direct and control the actions of BlueWaves' contractors who were acting as HDL's sales representative throughout the Country in States not directly serviced by Johnson or Dent. HDL has compensated BlueWave for the sales and marketing services provided by BlueWave's contractors, and upon information and belief, BlueWave passed a very small percentage of the compensation paid by HDL to the corresponding BlueWave contractor. Johnson and Dent pocketed the difference, which amounted to millions of dollars.

19.     In addition to the compensation provided to BlueWave under the Sales Agreement, that agreement obligated HDL to convey HDL stock to Johnson and Dent. HDL conveyed the applicable stock to Johnson and Dent pursuant to the Shareholders Agreement, which they signed on April 2, 2010.

20.     The Shareholders Agreement provides:

Each Shareholder acknowledges that the Company plans to engage its business as a clinical laboratory for disease management first in the state of Virginia and then to expand into other states (the "Market Area" meaning herein the states in which the Company is doing business at the time). Each shareholder further acknowledges that the Company has expended and continues to expend considerable time and resources in the

6

development of its services, markets and customer base, the development and training of its employees and sales force, and the acquisition of equipment and technology to facilitate its business.

21.     Under the Shareholders Agreement, Johnson and Dent also acknowledged that, as a result of HDL's expenditure of time and resources, HDL "possesses a competitive market position and goodwill of substantial proprietary value to it." They further acknowledged and agreed that they entered into the Shareholders Agreement and HDL issued shares to them, with the intent that they, as shareholders, "will contribute towards the ultimate expansion and success of the Company's business."

22.     Johnson and Dent agreed that if they or any other HDL shareholder "competed with the Company in the Market Area, either directly or through an affiliate or any other person or entity, irreparable damage would be suffered by the Company."

23.     Accordingly, Johnson and Dent agreed that while they owned shares (as they currently do), and for a period of one year after they relinquish ownership of their HDL stock, they will:

> not directly, or indirectly, in any manner or capacity, engage (or participate, invest in, operate, or become interested in, affiliated or connected with, or serve as an officer, director, partner, shareholder, member, manager, employee, consultant, or independent contractor of any person or entity, if such would cause the Shareholder to so engage, directly or indirectly) in the business of providing services of the kind provided by the Company as of the date of such termination, or in the marketing, sale or distribution of any related or ancillary service provided by the Company to its clients, customers and referral sources, within the Market Area.

24.     Additionally, under the Shareholders Agreement, Johnson and Dent agreed not to "solicit or provide services to, directly or indirectly through any other person or entity, any client or customer of the Company, or induce any such client or

customer to terminate its relationship with the Company, or cause or attempt to cause any person to cease referring business or clients to the Company."

25.     Pursuant to Section 13(b) of the Shareholders Agreement, Johnson and Dent also agreed that HDL "shall have the right to apply to any court of competent jurisdiction for an injunction to restrain and enjoin the Shareholders from violating the provisions" of the Shareholders Agreement dealing with the shareholders' duty to protect confidential information, non-competition and non-solicitation.

26.     Over the past year, HDL has conducted a review and analysis of its operations to ensure compliance with Federal and state laws and regulations applicable to HDL's business. In so doing, HDL became concerned that the Sales Agreement posed a risk of violating or inducing the violation of Federal and state laws.

27.     On December 22, 2014, HDL notified BlueWave that it had determined certain compensation components of the Sales Agreement posed a risk of violating federal and state law, and therefore, were subject to renegotiation under the terms of the Sales Agreement.

28.     While there were discussions between BlueWave's counsel and HDL's counsel following delivery of the December 22, 2014 letter, BlueWave never formerly responded to the letter, nor did it acknowledge its obligation to renegotiate the terms raised in the December 22, 2014 letter.

29.     During the period between the delivery of the December 22, 2014 letter and the termination of the Sales Agreement on January 9, 2015, Johnson and Dent have communicated to others, including HDL's shareholders, their intent to take all of HDL's business serviced by BlueWave to another laboratory.

30.     In addition, upon information and belief, Johnson and Dent have directed BlueWave's subcontractors not to speak with HDL regarding HDL's accounts serviced by those subcontractors and they have instructed them not to discuss becoming employed by HDL for the purpose of continuing to service HDL's clients.

31.     Johnson and Dent's actual or threatened action to move HDL's business to another laboratory and its refusal to allow its subcontractors to discuss HDL's customers with HDL or to discuss becoming employed by HDL constitutes an actual breach or anticipatory repudiation of the Shareholders Agreement.

32.     Johnson and Dent's actual or threatened actions have caused and will cause HDL irreparable harm in lost customer relations, lost business good will, lost reputation in the market, disruption of the market, and irreparable harm through the misappropriation of confidential information.

33.     HDL lacks an adequate remedy at law.

## PRAYER FOR RELIEF

Plaintiff asks this Court to enter preliminary and permanent injunctions in its favor and against Defendants enjoining Defendants, either acting individually or on behalf of or through any entity, including BlueWave, from:

(i)     competing with HDL by marketing, selling or distributing on behalf of themselves or any other company advanced laboratory testing for cardiovascular disease or diabetes throughout the Country, so long as they remain shareholders of HDL and for one year following relinquishment of any ownership interest in HDL;

(ii)     soliciting or providing services to, directly or indirectly, through any other person or entity, any client or customer of HDL, and

(iii)     inducing any client or customer of HDL to terminate its relationship with HDL or cause or attempt to cause any person to cease referring business or clients to HDL.

Plaintiff also asks this Court to grant such other further relief as the Court may deem proper and appropriate and to award Plaintiff its costs.

Date:    January 13, 2015                    Respectfully submitted,

HEALTH DIAGNOSTIC
LABORATORY, INC.


Charles M. Sims (VSB #35845)
Stephen M. Faraci, Sr. (VSB # 42748 )
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Post Office Box 2499
Richmond, Virginia 23219
(804) 343-5091 Telephone
(804) 783-7655 Facsimile
charles.sims@leclairryan.com

C. Matthew Haynes (VSB #77896)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
(703) 647-5919 Telephone
(703) 647-5989 Facsimile
matthew.haynes@leclairryan.com

Brien T. O'Connor
Ropes & Gray, LLP
Prudential Tower
800 Boylston Street
Boston, MA 02119
617-951-7385
Fax: 617-235-0084
Email: brien.o'connor@ropesgray.com

Laura G. Hoey
Ropes & Gray LLP
191 North Wacker Drive
32nd Floor
Chicago, IL 60606-4302
312-845-1200
Fax:   312-845-5500
Email:  laura.hoey@ropesgray.com